6-1-2-7-5, Rachel C. Williams v. American Honda Finance Corp. Mr. Rodney, good morning. Good morning, Your Honors. This appeal is about the interplay between two complementary statutes. The Motor Vehicle Retail Installment Sales Act, I'll just call that RISA for purposes of brevity, and the UCC. Particularly, it's about one provision of RISA, Deficiency Limitation Provision, which protects consumers in transactions governed by that statute from the excessive amount of a deficiency that has traditionally been allowed in the commercial version of the UCC. The District Court mistakenly conflated the Safe Harbor Provision of the UCC with the Deficiency Limiter Provision of RISA in such a way as to effectively negate entirely the provision that requires that in a consumer transaction, the fair market value of the car be used as a means of calculating the deficiency. In all situations, at least according to all of the commentators that we cited in our briefing, in which the magistrate judge, the views of which the magistrate judge effectively adopted in her analysis, the amount obtained at a repossession auction sale can almost never be equivalent to the retail fair market value that it acquired under RISA. So the threshold issue here is not what the fair market value of the car is, as the magistrate mistakenly assumed. The threshold issue is, were the notices that Honda sent, there are two here, one right after the repossession that describes the deficiency liability to Ms. Williams, and the second, the so-called Deficiency Demand Notice, which says, we have now sold your car for X, and you owe us this amount, and this amount is determined by deducting the sale proceeds from the repo sale from the outstanding loan balance. And that is not what is required by the statute, which of course requires the fair market value of the car be used instead. So the last issue, last item of the issue here is, what is the fair market value of the car? The first two issues are, were those notices correct? And as a fundamental principle of consumer law, there are two aspects to notice. One is, the consumer has to be accurately told her statutory rights before the transaction goes forward. Let me ask you something before you. So the statute says that, okay, so periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in particular trade or industry, be presumed to be the fair market value of the collateral. Yes. So there is a presumption that the evidence that you put on as to the retail value was the fair market value. So I'm hung up on the word presumption, because usually presumptions are rebuttable. And so if this is a commercially reasonable sale that produced this particular value, why wasn't the retail value rebutted? The magistrate cited Inouye Roberts and Wasilek, I can't pronounce the second bankruptcy court decision, for the proposition that the fair market value has to be established by evidence, including expert opinion. In fact, what the magistrate did find erroneously with respect to the bankruptcy court, but correctly with respect to RISA, is that the presumption in Section 20B applies here. Now that presumption was established, in our view, by Honda's own black book, the so-called accepted retail publication that provides a trade estimate of the retail value, that showed that Ms. Williams' car was worth at least $1,900 at retail. I'm not quibbling with that, but I'm saying that because I couldn't figure out how the judge could find that there was no evidence of the retail value, because clearly the black book was in evidence and she quoted from it. But I'm saying that assuming that that was in evidence, why isn't it rebutted because of a commercially reasonable sale that both sides agree were commercially reasonable? I'm sorry, Your Honor, I misunderstood. Because, first of all, the numbers rebutted. The commercially reasonable sale was a commercially reasonable auction sale and it produced a value of $8,900. The presumption, which was established by the black book, is that the car was worth $9,800. So Honda provided no evidence whatsoever to rebut the presumption that the $9,800 did establish the retail value of the car. But what I'd like to emphasize here today Well, the evidence was the auction price. Which was less than the amount they credited Ms. Williams for. So why didn't that rebut the presumption? Well, the presumption is that $9,800, the black book retail value, is the fair market value. Right, but why wasn't it rebutted? It's a rebuttable presumption. If it was a commercially reasonable sale, why didn't the actual price at sale rebut the black book value? Because that's not a retail value. The presumption applies to a retail fair market value. There is no evidence whatsoever that an auction sale produces a retail market value. In fact, the only case that Honda cites for the proposition that an auction sale could at any point produce fair market value was the JFK Sloop case, which is entirely anomalous. But what I would like to emphasize is that the first aspect is notice. So when the notice goes out, the consumer has to be told fairly accurately what her rights are under the law. And her rights, as the magistrate correctly found, is that she's entitled to have the fair market value of her car used as That's where you lose me on that one. Okay, maybe you can set me straight. If you put Marissa to one side, and you have the UCC, and then you have a sale, there's a test that the UCC has for whether the creditor can use that sales proceeds, and it's the commercially reasonable test. In other words, if the sale were not commercially reasonable, then the seller could not demand the difference between the debt and the proceeds. As I understand your argument, Marissa changed the test because Marissa went from the commercially reasonable test to the fair market value, at least as a presumption. And so you're saying the notice should have told her that the real item that would be subtracted from the debt would be the fair market value of the car, not necessarily the proceeds of the sale. That's how I understand your argument. That's correct. The reason I have a problem with it is that under the UCC safe harbor notice, which for 50 years creditors have been told in Massachusetts you can use, the commercially reasonable test doesn't have to be in the notice. In other words, the pre-existing notice did not cover as a required element of the notice the test used to be applied to whether you could use the sales proceeds. So when you come in and argue that that test changed and is no longer commercially reasonable but now is fair market value, it seems to me we could say, well, fine, that may be the case, but there was no requirement under the safe harbor provision that the test be in the notice. That's where I'm losing your argument. Two things, Your Honor. One is the safe harbor provision is subject to the corresponding provision of RISA, which expressly says, unless displaced by the provisions of this section, 20B, which contains the fair market value determinant. Then Article 9, Section 6 applies. It would entirely negate the fair market value requirement to simply say, well, if the test, if the sale is commercially reasonable, then whatever the creditor gets. No, no, no, I'm not saying that. I'm not saying that at all. We're talking about what has to be in the notice. Your whole case is that the notice is deficient because it doesn't disclose to the consumer the presence of the fair market value test. And my problem is that it seems that the drafters of the notice requirement, the safe harbor that creditors have been told to use and that this creditor used essentially word for word, doesn't include on the checkoff list the test, whether it's commercially reasonable or fair market value. And you want us to write that into the safe harbor notice and indeed to show that creditors for 50 years have been using the wrong notice, or at least since 1973. Well, first of all, creditors, plural, haven't been using the wrong notice for 50 years. In fact, many creditors do use the correct notice. Well, anyone who used what Massachusetts legislature said was the safe harbor, your argument is for 40 years they've been using the wrong notice. At least for this case, this is the wrong notice, Your Honor. Yes. Secondarily, if you consider what the ruling would look like if your proposition were to hold true, that would mean that there's a fair market value requirement in RISA, but that it is entirely eviscerated by the safe harbor provision, despite the fact that... No, no, no, I'm not saying that at all. Once you get the safe harbor, there's a sale. Well, she can come in and argue, you got too little. I don't care whether you got too little. I'm pointing to the Black Book. The Black Book shows a retail value of $9,800, and you only got $9,000. She's then entitled to a presumption in that proceeding challenging the value. They could try to rebut it by saying, well, the fair market value is commercially reasonable, and there'd be a fact finding. But she'd have the power of this presumption, so it's not negated. That actually brings us back to my initial point, the seminal point that Judge Sorokin recognized. Unless you inform the consumer accurately of her statutory rights, then she has no way of knowing that she has this fair market value defense to rely upon. Just as she wouldn't have known, even without RISA, that she had the commercially reasonable test to rely on, because that wasn't required to be in the notice. But the distinction here is that that's the Uniform Commercial Code, the commercially reasonable test, which applies across the board. This is a consumer protection statute specifically enacted by the legislature to prevent consumers from being subject to the unreasonably low commercial auction prices. So to suggest that the two statutes can't be read in a complementary fashion, and that the one clause in RISA displaces the clause in the statute, that the UCC is the safe harbor provision, would effectively eviscerate the entire consumer protection scheme, because no consumer, in fact most lawyers, don't even know that this fair market value determinant exists. With respect to that, I do want to also point out one other thing. Notice is so important, even under the UCC, that a flawed notice under Section 9614, which is the one that contains the safe harbor notice, and which has to be read in a complementary fashion with RISA's fair market value determinant, enables the consumer, or I should say entitles the consumer, as a matter of law, and that's comment two to Section 9614, to statutory damages. The magistrate thought wrongly that the fair market value had to be proven as an element of establishing that the notice was inaccurate. In fact, the notice is inaccurate because it misstates and inflates her actual deficiency obligation. That cannot be reasonable, as the UCC itself describes it, because it's inaccurate. And when it's unreasonable and when it's inaccurate, then Section 9625 of the UCC provides for minimal statutory damages, and in fact, despite the absence of any actual damages whatsoever. So the first element is notice, and that provides not only the statutory damages, but it also provides, under RISA, a negation of the deficiency. RISA is designed to protect the consumer against such a circumstance as this, where the deficiency obligation is misstated and the deficiency demand is inflated. When there's a failure to comply with all of the provisions of RISA, and here it's really indisputable, despite the initial notice, that Honda, in the secondary notice, the deficiency demand, told her that she owed the difference between the sale proceeds and the outstanding loan balance, and that is a violation of RISA, as the magistrate found. She found the fair market value determinant had to be used to calculate her deficiency. Honda, indisputably, used the sale proceeds instead. That's another violation of the UCC, this time Section 9616, which governs that second notice, the deficiency notice, and it also, under the express terms of RISA, precludes Honda's ability to collect any deficiency whatsoever. These violations are also per se violations of Chapter 93A. Again, going back to the notice idea. Seminal principle under Chapter 93A. Tell the consumer in a clear and conspicuous way what the rules of the game are before the consumer enters into the transaction. If you misstate the rules of the game here, if you misstate the consumer's statutory right to a fair market value determination, then you have violated Chapter 93A, and so we've got a violation of 93A, of RISA, which is enforced through 93A, and of the UCC by its own terms under Comment 2, as a matter of law, inaccurate information entitles the consumer to statutory damages under the UCC. Thank you. Thank you. Mr. Matheson, good morning. Good morning. May it please the Court, Eric Matheson on behalf of Defendant American Honda Finance. I'd like to begin by returning to the question that Judge Thompson raised early on in Mr. Roddy's presentation, which was why wasn't that presumption rebutted? And the answer is if the presumption applied in the first place, and I'd like to return to that if I have time, if it applied in the first place, it was plainly rebutted for several reasons. One is, as Your Honor pointed out, as Judge Thompson pointed out, we have an actual sale price, and how do you determine fair market value other than, what's a better way to determine fair market value than look at an actual sale price in a competitive environment, which is what we're talking about here? I thought the legislature said actually you should look at the black book, and that's the presumption. The presumption is that You may be able to rebut it by saying this is a good enough sale and markets work and there'll be an argument over it, but the legislature certainly told us where we first look when we are asked to look at fair market value. Actually, what the legislature told courts to do is in a proceeding for a deficiency, which this is not, you look first to the retail fair market value as reported in various guidebooks. That's what the legislature told courts to do. Isn't that the black book? The black book would qualify as one. There are a number of them, yes. So that's where we start is the presumption is that the black book price is the price. And my point is You can try to rebut it with proof of a commercially reasonable sale and the fact finder can listen to your evidence about the sale, see how it was advertised aside, and make a decision and the statute leaves it as a fact issue. In a proceeding for a deficiency, that is absolutely correct. Again, that's not what we're talking about here. But assuming that that presumption applies in the first place, my only point is that the presumption, which Your Honor correctly described, has been rebutted through this commercially reasonable sale. Well, it's a fact issue. We don't move on a fact issue. You certainly can't say that every sale automatically fully rebuts it in a summary judgment sentence because otherwise you would have just eliminated the fair market value requirement. No, but first of all, it's undisputed that we've got a commercially reasonable sale here. That's something the plaintiff has admitted is the case. It's undisputed, and the plaintiff has admitted this as well, that that auction process that Honda used in the plaintiff's case was designed to obtain the highest possible price. It's undisputed, and the plaintiff has admitted this as well, that Honda uses the same method to sell cars for its own account tens of thousands of times every year. Right, so you can rebut the presumption. What's there in the statute that says that that eliminates the presumption and precludes the fact finder from going with the presumption? Well, that now gets to the question of whether the presumption applies in the first place. So if I can address that. But why do we even care about any of this when we go back to the notice? Isn't the whole issue in this case the adequacy of the notice? That's exactly right, and the adequacy of the notice is governed primarily by the UCC, which is that safe harbor language that Honda followed pretty much to a T. And the safe harbor language doesn't include either fair market value or commercially reasonable as the test. That's absolutely correct. So you've got to convince us that there's something about Marissa that didn't change that to not only change the standard but add a new provision to the notice. Well, if Marissa were going to do that, it would have done so far more explicitly than what we see in the actual statute. The actual statute is a provision that is focused on what happens in the situation, again, not present here, when a creditor comes after the debtor, files a lawsuit against the debtor. It doesn't just send them a letter that says, please pay us whatever the number is, but files a lawsuit. And with all that that entails, you obtain a judgment, you can garnish their wages, you can go after their bank accounts, et cetera. When that happens, then Marissa is right there in full force and providing this presumption, providing this protection for the debtor in that circumstance. What we're talking about here has nothing to do with that. Honda has not sued plaintiff. Honda almost never sues any of the debtors whose cars it repossesses. What it does is it tries to comply with Massachusetts law by sending out the safe harbor language that the UCC has blessed for many decades, tries to recoup as much as it can when it sells these cars in a very competitive market, and credits those sales dollar for dollar when it puts those numbers in the notice. So my point is that, aside from what I've already said, that presumption that we've talked about this morning really doesn't come into play in this part of the process. The presumption comes into play in the unusual circumstance when the creditor goes after the debtor and files a lawsuit to try to actually collect this money through judicial process. We're talking about a presumption here, right? So you're saying that once Honda has determined what in its opinion is the deficiency, short of filing a lawsuit, their ongoing collection efforts as well as activities that affect people's credit rating. I'm not saying it's meaningless, Your Honor. I'm saying it's a different type of situation than what we're talking about when a creditor actually files a lawsuit against the debtor. It's a whole different type of situation. But doesn't it make it more important for the notice more important so that the debtor has some clue about what their consumer protection rights are in the event that their car is repossessed? I'm not trying to minimize the importance of the notice. And we've got very robust provisions in the Uniform Commercial Code that are pretty consumer friendly, pretty plain English, explain what their rights are. But if you look at Marissa, the only provisions that it has about the notice talk about the notice you have to send before you even repossess the car. That's not the notice at issue here. The Marissa provisions talk about things like making sure that, for example, if you're going to repossess the car and you're going to go on somebody's property, you have to have their permission. The UCC doesn't have that protection. It has various other protections like that. It has the presumption built into the statute if and when a creditor actually files a lawsuit against a debtor. But when we talk about presumptions, that's a legal term. An evidentiary presumption is what we're talking about here. I don't know how a presumption operates when it comes time to fill in a blank on a form that Honda is supposed to send to its customers explaining what the situation is. Well, it'd be easy. When you wander off to start, I don't think you're going to make us feel kind of warm and cuddly about the collection practices in the notice because you clearly don't tell the consumer that they're not automatically on the hook for the sales proceeds. Under the UCC, it has to be commercially reasonable. You don't tell them that. And under the Marissa, they've got this presumption that there's a fair market value and the letter doesn't tell them that. Really, I don't see why you're saying anything other than the legislature told us what to put in the notice. We put it word for word in the notice, so be it. Then I would echo what Your Honor just said. I agree with that. I'm not trying to persuade the panel to feel warm and fuzzy about collection efforts or repossessions. It's certainly not something that Honda wants to do. It's not a pleasant process for anybody, certainly not the consumer. It's not good for business. But my point is that Honda complied with the law. It complies with that $2,000 threshold. It doesn't send a deficiency notice to people whose balances before repossession were less than $2,000. It's doing what it can, what it believes it needs to do, to comply with the law by sending legitimate, lawful notices. I don't know what else it can do other than follow the form that is set out in the UCC, the safe harbor language that's been used for decades. So your bottom line is that this 1974 Marissa change did not in any way implicate what had to be in this notice? That's correct, Your Honor, except to the extent that it has that $2,000 threshold. If somebody's account balance before the repossession is less than $2,000, then it does affect the notice by definition. And you're saying that the only significance of this change is that in the event there is a collection effort, then this provision sets up an evidentiary rebuttable presumption? Yes. How does it affect the notice, the $2,000 required? Well, if you're saying that... It just affects when you send the notice to people. That's a fair... But it doesn't change the notice at all. That's a better way to put it, Your Honor. Yes, yes. Unless the Court has other questions. Thank you. With respect to the notion that Honda is at a loss for what to say, because Honda has designated the document confidential, I can't do anything other than allude to it. But on page 11 of our opening brief and the supplemental joint appendix, page 12, it's a perfectly phrased illustration of what the notice should say. I think that's exactly what it would require that discloses to the consumer exactly what her rights are in a way that makes RISA and the UCC complementary, instead of in a way that has the UCC negating the provision of RISA, which is designed to inform the consumer of her rights. Secondarily, I do want to emphasize that there are two notices here. So quite apart from the initial post-repossession notice, there's the deficiency notice under Section 9616. And it's indisputable that Honda, in that notice, tells the consumer her obligation is to pay the difference between the sale proceeds and the outstanding loan balance. That is a per se violation of RISA. And the magistrate judge found that the fair market value requirement applied, so that negates Honda's ability to get a deficiency and as a matter of law is inaccurate notice under 93A and under RISA. Third, the notion that the legislature allowed the safe harbor provision to trump RISA's provision essentially has been disagreed with by every knowledgeable commentator to review this. The National Consumer Law Center's amicus brief points this out as well. And it seems as though the magistrate judge certainly accepted the premise that the fair market value determined has to apply. So I don't understand how there could be an interpretation of these two statutes, which are designed to be read in a complementary fashion, in such a way as to allow a notice to be sent to consumers across the state, year after year, which expressly misstates their rights under the very Consumer Protection Statute, which is designed to ensure that the sale proceeds do not determine what their deficiency liability is. Thank you.